IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| DARLA JOHNSON, individually and o/b/o D. Doe, a minor,<br><br>                    Plaintiffs,<br><br>vs.<br><br>DODSON PUBLIC SCHOOLS, DISTRICT NO. 2-A(C), MISTY NEWBY, DOLLYANN WITTCUTT, and ROBERT DOLPHAY,<br><br>                    Defendants. | CV-05-39-GF-CSO<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Plaintiffs Darla Johnson ("Johnson"), individually and on behalf of her grandson, D. Doe (collectively referred to as "Plaintiffs"), initiated this action seeking damages and equitable relief against Defendants Dodson Public Schools, District No. 2-A(C) ("the District"), Misty Newby ("Newby"), DollyAnn Willcutt ("Willcutt"),[1] and Robert Dolphay ("Dolphay") for violation of their rights under 42 U.S.C. § 1983 and Title VI

---

[1] In the caption of Plaintiffs' Complaint this Defendant's last name is spelled "Wittcutt". However, in the body of the Complaint and throughout the parties' pleadings her last name is spelled "Willcutt". Accordingly, the Court will assume that her last name was misspelled in the caption, and the proper spelling is "Willcutt".

of the Civil Rights Act of 1964.[2]   Plaintiffs also seek damages

and equitable relief under Montana state law.  By Notice filed

March 2, 2006, upon the parties' consent, the Clerk of Court

transferred this case to the undersigned for all purposes.  See

Court's Doc. No. 23.

Before the Court is Defendants' Willcutt, Dolphay, and the

District's motion to dismiss.[3]  See Court's Doc. No. 4.  On

December 21, 2005, Plaintiffs filed their response to Defendants'

motion.  See Court's Doc. No. 15.  Defendants filed their reply

brief on January 30, 2006.  See Court's Doc. No. 21.[4]

Having reviewed the motion and the parties' briefs in

support of their respective positions, the Court is prepared to

rule.

## I.   ALLEGATIONS OF COMPLAINT

Plaintiffs filed their Complaint on April 6, 2005.  See

---

[2] The Complaint was filed by Plaintiffs acting pro se.  Prior to
service of the summons, counsel filed an appearance on their behalf.
See Court's Doc. No. 2.

[3] The Court notes that this motion was not brought by all
Defendants.  However, the Court will refer herein to those bringing
the motion collectively as "Defendants".

[4] Defendants' reply brief is thirteen (13) pages long, excluding
their certificate of service.  Local Rule 7.1(f) states that "Reply
briefs may not exceed ten (10) pages unless the filing party has
obtained prior leave of Court.  If filed without leave, such briefs
will not be considered by the Court."  Although Defendants failed to
seek leave to file this overlength brief, the Plaintiffs did not
object.  In this instance, the Court will consider the brief.  The
parties are advised, however, that the Court expects all counsel to
adhere to the Local Rules.

*Court's Doc. No. 1.* Plaintiffs allege that on or about, April 7, 2003, Defendant Newby placed D. Doe, a student in her fourth grade class, in the corner because he was talking during class without permission. *Plf.s' Compl.* at ¶¶ 8, 10, 11. Plaintiffs contend that while in the corner, Newby bound D. Doe's hands behind his back with clear duct tape, and placed clear duct tape over his mouth. Id. at ¶ 12. D. Doe was left in this position for an extended period of time, and eventually Newby tore the tape from his wrists and mouth leaving red tender skin. Id. at ¶¶ 13-14.

On or about April 15, 2003, Johnson learned of the incident, and inquired with D. Doe, who confirmed that Newby bound his hands and taped his mouth on this occasion, and on separate occasions. Id. at ¶¶ 15-16. The next day, Johnson contacted Superintendent Willcutt to report the incident. Johnson expressed her concern for the safety of D. Doe, and her concern about Newby teaching in the classroom. Id. at ¶ 17.

Willcutt called Johnson the next day and confirmed that the incident had occurred and that Newby would be "reprimanded." Later that day, Newby called Johnson, to explain why she had bound and taped D. Doe. Id. at ¶ 18. By letter dated April 22, 2003, Willcutt informed Johnson that she had "addressed concerns over issues that have occurred in your child's classroom." Id. at ¶ 19.

-3-

Plaintiffs allege that on April 23, 2003, Newby saw D. Doe in the lunchroom and struck him in the back of the head causing D. Doe pain.  Id. at ¶ 20.  After learning of this incident, Johnson contacted Willcutt and requested that Newby not be around D. Doe without another adult present.  Plaintiffs contend that, as a result, D. Doe was taken out of Newby's classroom, placed in a hallway, and Newby continued to teach.  Id. at ¶ 21.

Johnson contacted the District to discuss her concerns regarding the treatment of D. Doe.  She was told she needed to be placed on the Board of Trustees' agenda in order to express her concerns.  Johnson made arrangements to do so.  Id. at ¶ 23.

Johnson attended the May 13, 2003, board meeting, which was presided over by Dolphay, Chairman of the Board of Trustees. Johnson was not allowed to speak during the regular agenda, as requested.  She was only permitted to address the Board during the "public comment" period, in which Plaintiffs allege there was no interaction with the Board.  Plaintiffs contend that she was only allowed to speak in "generalities without the use of names to describe her concerns."  Id. at ¶ 24.  At the meeting, several Dodson School teachers spoke in favor of Newby and her behavior, they also spoke in favor of excusing her actions.  No action was taken by the Board of Trustees.  Id. at ¶ 25.

On May 15, 2003, Johnson allegedly received a call informing her that teachers at Dodson School were told to record any

negative behavior they might see by D. Doe.  Id. at ¶ 26.  The
Complaint does not identify who placed this call.  Johnson also
learned that in the past, Newby had taped and bound other Native
American students.  Id. at ¶ 27.  The Complaint does not allege
how she obtained this information.  Having concerns for D. Doe's
safety and his ability to learn in such an environment, Johnson
removed D. Doe from Dodson School District.  Id. at ¶ 28.

     Based on these fact allegations, Plaintiffs' Complaint
states three counts.  In the first count, Plaintiffs allege a
violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000d, *et seq.*  Id. at ¶¶ 44-47.  Count two alleges a violation
of 42 U.S.C. § 1983, founded on the Fourteenth Amendment, and its
equal protection provision.  Id. at ¶¶ 48-49.  The third count
alleges two state law negligence claims: (1) assault, battery,
and abuse upon a minor; and (2) negligent hiring, training,
orientation and supervision.  Id. at ¶¶ 50-52.  In their prayer
for relief, Plaintiffs request an order enjoining the District
from engaging in further discrimination because of race or
national origin; compensatory damages; punitive damages; an order
for each Defendant to take actions necessary to make Plaintiffs
whole; and attorney's fees.  Id. at pg. 12.

## II.  **PARTIES' ARGUMENTS**

     Defendants move to dismiss this case on several grounds.
First, they argue that as a matter of law Plaintiffs' allegations

"do not give rise to the civil rights claims pleaded[.]"  *Def.s'*
*Brief in Support of Mot. to Dismiss* (hereafter "*Def.s' Brief*") at
2.  Second, they assert that Plaintiffs' state law claims are
preempted and/or should be dismissed for failure to exhaust
administrative remedies.  Third, Defendants contend that
Superintendent Willcutt and Board of Trustees Chairman Dolphay
are entitled to qualified immunity under federal law and absolute
immunity under state law.  Fourth, they allege that Plaintiffs'
claims for punitive damages should be dismissed because neither
state nor federal law allow for punitive damages.  Finally,
Defendants argue that any individual claims brought by Johnson
should be dismissed because she lacks standing to bring such
claims.  Id.

Plaintiffs respond by arguing that the "bulk of [the
Defendants'] arguments are premature for consideration at this
early stage[.]"  *Plf.s' Response to Def.s' Mot. to Dismiss*
(hereafter "*Plf.s' Brief*") at 2.  They contend that
discriminatory intent does not need to be specifically pled in
order for their Title VI claim to survive.  Id. at 3-5.
Plaintiffs assert that their Title VI claim does not preempt
their state law negligence claims, nor did they have a duty to
bring a state discrimination claim under the Montana Human Rights
Act before filing their state law negligence claims.  Id. at 5-9.
They argue that they have sufficiently stated a claim under §

-6-

1983.  <u>Id</u>. at 10-14.

Further, Plaintiffs contend that Willcutt and Dolphay are not entitled to qualified immunity under federal law, nor absolute immunity under state law.  <u>Id</u>. at 14-18.  They allege that Johnson is entitled to seek relief under all of her individual claims.  <u>Id</u>. at 18-19.  Finally, they assert that punitive damages are permitted against the Defendants in their individual capacities under § 1983.  <u>Id</u>. at 19-20.

## III.  <u>RELEVANT LEGAL STANDARDS</u>

### A.    **RULE 12(B)(6) DISMISSAL STANDARDS**

In considering a motion to dismiss, the Court must "take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the plaintiff."  <u>Seinfeld v. Bartz</u>, 322 F.3d 693, 696 (9th Cir. 2003) (quoting <u>Desaigoudar v. Meyercord</u>, 223 F.3d 1020, 1021 (9th Cir. 2000), *cert. denied*, 532 U.S. 1021 (2001)).  Dismissal is improper unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims that would entitle them to relief.  <u>See DeGrassi v. City of Glendora</u>, 207 F.3d 636, 644 (9th Cir. 2000).

Courts must assume that all general allegations "embrace whatever specific facts might be necessary to support them." <u>Peloza v. Capistrano Unified School Dist.</u>, 37 F.3d 517, 521 (9th Cir. 1994), *cert. denied*, 515 U.S. 1173 (1995).  The Court is not required to assume, however, that plaintiffs can prove facts

-7-

different from those alleged in their Complaint.  See Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).  Also, the Court may dismiss a claim where a plaintiff has alleged facts that disclose some absolute defense or bar to recovery.  See Weisbuch v. County of L.A., 119 F.3d 778, 783 n.1 (9th Cir. 1997) ("If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts.").  A pleader failing to state a claim will generally be allowed an opportunity to amend the complaint unless an amendment would be futile.  Public Utility Dist. No. 1 v. IDACORP Inc., 379 F.3d 641, 646 (9th Cir. 2004); see also Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (holding that leave to amend should be granted more liberally to *pro se* litigants).

**B.   STANDING REQUIREMENTS**

The issue of standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975).  In every federal action, "the party bringing the suit must establish standing to prosecute the action." Elk Grove Unified School

-8-

Dist. v. Newdow, 542 U.S. 1, 11 (2004).  Standing is a question of law for the Courts.  San Diego County Gun Rights v. Reno, 98 F.3d 1121, 1124 (9th Cir. 1996).

To establish standing, plaintiff must prove that: (1) she suffered an "'injury in fact'" which is "concrete and particularized" and "'actual or imminent, not 'conjectural' or 'hypothetical'"; (2) "there must be a causal connection between the injury and conduct complained of[;]" and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations and quotations omitted).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  Id.

## IV.  DISCUSSION

### A.  FEDERAL CLAIMS

#### 1.  Count I - Title VI

Count I of the Plaintiffs' Complaint is brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et. seq.* ("Title VI").[5]  *Plf.s' Compl.* at ¶¶ 44-47.  In Count I,

---

[5] Title VI provides in pertinent part that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be

Plaintiffs allege that the District violated Johnson and D. Doe's rights by:

> intentionally discriminating against each of them due to race and/or national origin because they are non-white (Native American) excluding them from participating in, and denying them the benefits of district programs and/or activities and by favoring Misty Newby, by treating Johnson and D. Doe differently and less favorably than similarly situated others who were white or Caucasian, and by demonstrating a deliberate indifference to and reckless disregard of the rights of D. Doe to be free from risks to his safety and welfare posed by the employment and continued employment of Newby who engaged in abusive and physically assaultive disciplinary tactics outside in [sic] violation of law and school policy.

Id. at ¶ 44.  Plaintiffs seek to recover monetary damages and equitable relief as permitted by law.  Id. at ¶ 47.

### a.   Johnson's Standing

Defendants move to dismiss Johnson's individual Title VI claim for lack of standing.  They contend that because the right to bring an action under Title VI is personal in nature, Johnson cannot allege an independent claim for damages.  *Def.s' Brief* at 19.  Defendants argue that "[f]ederal law is clear that parents of a student who is allegedly subjected to racial discrimination at school lack standing to assert Title VI damages in their own right."  *Def.s' Reply Brief in Support of Mot. to Dismiss* (hereafter "*Def.s' Reply Brief*") at 11.

---

subjected to discrimination under any program or activity receiving Federal financial assistance."

The Court finds that Johnson lacks standing to assert an individual claim for damages under Title VI.  In order to state a claim under Title VI, Johnson must be "an intended beneficiary of, an applicant for, or a participant in a federally funded program."  Jackson v. Katy Indep. School Dist., 951 F.Supp. 1293, (S.D. Texas 1996) (citing Simpson v. Reynolds Metals Co., Inc., 629 F.2d 1226, 1235 (7th Cir. 1980)).  The intended beneficiaries of Dodson Public Schools, which is a federally funded public school program, are the students of the school, including D. Doe. Johnson, as custodian and grandmother of D. Doe, is not an intended beneficiary, nor a participant in the school.

The Ninth Circuit has rejected third-party beneficiary claims under Title VI when the relief sought is monetary damages. See Fobbs v. Holy Cross Health System Corp., 29 F.3d 1439, 1447-48 (9th Cir. 1994), *cert. denied*, 513 U.S. 1127 (1995), *overruled in part on other grounds*, 241 F.3d 1131 (2001) (granting an African-American doctor standing only to seek declaratory or injunctive relief on claims of racial discrimination against his patients).  In their brief, Plaintiffs argue that Johnson is entitled to injunctive relief, but not monetary damages.  *Plf.s' Brief* at 19.  However, in their Complaint they specifically allege that "Plaintiffs are entitled to recover damages from the School District and to equitable relief as permitted by law." *Plf.s' Compl.* at ¶ 47.  Thus, Johnson does in fact seek to

-11-

recover monetary damages, as well as injunctive relief from the District.

Accordingly, Johnson has standing to seek injunctive relief on her Title VI claim against the District, but lacks standing to advance her claim to monetary damages.  See Fobbs, 29 F.3d 1439, 1447-48, 1450.[6]  Therefore, the Court will grant Defendants' motion with respect to Johnson's individual claim under Title VI for monetary damages, and deny Defendants' motion with respect to Johnson's individual claim for equitable relief.

### b.    Private Right of Action

Defendants argue that Willcutt and Dolphay cannot be named as Defendants under Plaintiffs' Title VI claims because they do not independently receive federal funds.  *Def.s' Brief* at 16. Plaintiffs agree with Defendants on this issue, and indicate that they do not assert Title VI claims against Willcutt and Dolphay. *Plf.s' Brief* at 5.

Accordingly, the Court will grant this portion of Defendants' motion.

### c.    Intent

Defendants argue that Plaintiffs' Title VI claim fails because Plaintiffs have not and cannot plead the requisite intentional discrimination.  *Def.s' Brief* at 7.  They contend

---

[6] Johnson may also bring an action under Title VI on behalf of her grandson D. Doe, who, as an intended beneficiary, has standing to assert a claim for discrimination under Title VI.

that there are no facts which could be deemed intentional discrimination by the District, so there can be no Title VI liability.  Id. at 9; *Def.s' Reply Brief* at 2.  Defendants argue that Plaintiffs' Title VI claims against the District fail as a matter of law.  *Def.s' Brief* at 9.

Plaintiffs argue that Defendants' motion is premature as well as incorrect as a matter of law, and thus should be denied. Id.  They contend that the allegations in their Complaint constitute a prima facie case under Title VI.  Id. at 4. Plaintiffs assert that the Ninth Circuit holds that intent need not be specifically pled but must be demonstrated at trial. Accordingly, Plaintiffs argue that "they must be allowed the opportunity to demonstrate that [D]efendants' acts, as stated and further developed through discovery, demonstrate intent to discriminate in violation of Title VI[.]"  Id. at 4-5.  In the alternative, Plaintiffs ask that if the Court agrees with Defendants' argument, Plaintiffs be given the opportunity to amend.  Id. at 5.

The Ninth Circuit addressed the pleading requirements of Title VI in the Fobbs case.  In Fobbs, *supra*, the Court held that to establish a claim for damages under Title VI, Plaintiffs must allege that: "(1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance."  29 F.3d at 1447 (citing Wrenn v. Kansas,

-13-

561 F.Supp. 1215, 1221 (D.C. Kan. 1983); see also Davison ex rel.
Sims v. Santa Barbara High School, 48 F.Supp.2d 1225, 1229 (C.D.
Cal. 1998); Darden v. Alameda County Network of Mental Health,
1995 WL 616633 **2-3 (N.D. Cal. 1995).  At the pleadings stage,
it is only required that "the complaint allege that the defendant
is engaging in discrimination, although a showing of intent is
necessary at trial."  Monteiro v. Tempe Union High School, 158
F.3d 1022, 1026 (9th Cir. 1998) (citing Fobbs, 29 F.3d at 1447).

    Defendants' motion seeks to engage the Court in an analysis
of whether the specific facts alleged would allow a jury to find
for the Plaintiffs.  Rule 8(a)(2), Fed. R. Civ. P., however,
requires nothing more than "a short and plain statement of the
claim showing that the pleader is entitled to relief."
Plaintiffs' Complaint meets Rule 8(a)(2)'s requirement because it
sets forth facts sufficient to show discrimination on the part of
the District.  Plaintiffs have alleged that Defendants engaged in
racial discrimination, and that Defendants are recipients of
federal assistance.  See Plf.s' Compl. at ¶ 4 ("Defendant Dodson
School District #2A (C) . . . is a recipient of federal funds")
and ¶ 44 (Defendants "intentionally discriminated" against
Plaintiffs because they are Native American); see also generally
¶¶ 8-43.

    For the Court to acquiesce to Defendants' request to
evaluate Plaintiffs' ability to prove their claim based only upon

those specific allegations contained in their Complaint would be to reverse the presumption that governs motions to dismiss by construing the facts in the light most favorable to the Defendants.  It would require the Court to assume that the Plaintiffs can prove only those facts that are alleged in their Complaint.  At this stage, the Plaintiffs need only state their claim, not prove it.  Accordingly, the Court finds that Plaintiffs have sufficiently stated a claim under Title VI. Defendants' motion to dismiss on this issue is denied.

### d.   Punitive Damages

Defendants have requested dismissal of all punitive damage claims by Plaintiffs.  They argue that punitive damages may not be awarded in private suits for race discrimination under Title VI.  *Def.s' Brief* at 20.  In their response brief, Plaintiffs concede that punitive damages under their Title VI claim are not permitted.  *Plf.s' Brief* at 19.  Accordingly, to the extent that Plaintiffs seek punitive damages under their Title VI claim, Defendants' motion is granted.

### 2.   Count II - 42 U.S.C. § 1983

Count II of the Plaintiffs' Complaint is brought under 42 U.S.C. § 1983 ("§ 1983").[7]  *Plf.s' Compl.* at ¶¶ 48-49.  In Count

---

[7] Section 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

II, Plaintiffs allege that Defendants "denied [P]laintiffs equal
protection of the laws as afforded under the 14th [A]mendment,
and their liberty interests implicated by those protections,
because they are nonwhite and tribal members the District
violated Johnson and D. Doe's rights by treating them differently
and less favorably than similarly situated persons who are white
or not tribal members." Id. at ¶ 48.  Plaintiffs seek to recover
damages and equitable relief as permitted by law for these
alleged violations.

### a.   Johnson's Standing

The Defendants move to dismiss Johnson's individual § 1983
claim for lack of standing.  Defendants argue that Johnson has
not stated a basis for the assertion of her individual
constitutional claims under § 1983, nor has she asserted separate
factual allegations. Id. at 19; *Def.s' Reply Brief* at 10.  They
contend that her "claims arise out of and are derivative of her
grandson's claims" and thus, fail to identify an individual cause
of action. *Def.s' Reply Brief* at 10.

Johnson responds by arguing that dismissal is inappropriate.
She contends that she has made claims for violation of her own

---

any rights, privileges, or immunities secured by the Constitution and
laws, shall be liable to the party injured in an action at law, suit
in equity, or other proper proceeding for redress, except that in any
action brought against a judicial officer for an act or omission taken
in such officer's judicial capacity, injunctive relief shall not be
granted unless a declaratory decree was violated or declaratory relief
was unavailable."

rights under § 1983. *Plf.s' Brief* at 18.  Johnson alleges that
she has claimed that the Defendants have interfered with the
parent-child relationship.  Id.  She argues that because she has
alleged facts which go to the interference claim, she should be
allowed to proceed with her § 1983 claim, or in the alternative,
be allowed to amend the Complaint to supplement her allegations.
Id.

Parents may not bring derivative § 1983 claims on their own
behalf based on violations of the constitutional rights of their
children.  Morgan v. City of N.Y., 166 F.Supp.2d 817, 819 (S.D.
N.Y. 2001) (citing Burrow v. Postville Community School Dist.,
929 F.Supp. 1193 (N.D. Iowa 1996)).  The Ninth Circuit, however,
has recognized a parent's individual claim under § 1983 for
governmental interference with the parent-child relationship.
See Kelson v. City of Springfield, 767 F.2d 651 (9th Cir. 1985);
Morrison v. Jones, 607 F.2d 1269 (9th Cir. 1979), *cert. denied*,
445 U.S. 962 (1980).

Construing the Complaint in the light most favorable to
Johnson, the Court believes dismissal is inappropriate.
Plaintiffs allege in their Complaint that "[a]s a direct and
proximate result of the cumulative effect of the actions of the
defendants described above, Johnson and D. Doe have had their
family relationships disrupted[.]"  *Plf.s' Compl.* at ¶ 42
(emphasis added).  Johnson need not "set out in detail the facts

-17-

upon which [s]he bases [her] claim." <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).  Rather, she need only give Defendants "fair notice of what [her] claim is and the grounds upon which it rests." <u>Id</u>.  In light of the foregoing, the Court concludes that Johnson has met her pleading burden with respect to this issue, and rejects Defendants' argument to the contrary.[8]

### b.   Statutory Title VI Claim

Defendants ask the Court to dismiss Plaintiffs' § 1983 claim that is founded on statutory Title VI claim.  *Def.s' Brief* at 3.  Relying on <u>Alexander v. Chicago Park District</u>, 773 F.2d 850, 856 (7th Cir. 1985), Defendants argue that Title VI provides for its own remedial scheme, thus, private actions based on Title VI may not be pursued under § 1983.

Plaintiffs responded by clarifying the scope of their Complaint.  *Plf.s' Brief* at 9.  They assert that they do not allege a Title VI statutory basis for their § 1983 claim.  <u>Id</u>.

Accordingly, the Court will grant Defendants' motion on this issue.

### c.   Municipal Liability

---

[8] That being said, however, the Court does recognize that there is a high standard needed to overcome a motion for summary judgment on a claim for interference with the parent-child relationship.  <u>See</u> <u>Harry A. v. Duncan</u>, 351 F. Supp.2d 1060, 1068 (D. Mont. 2005) (recognizing that <u>Kelson</u> and the cases it cites have "establishe[d] the existence of a constitutionally protected right to be free from termination of the parent-child relationship or from governmental interference with the parent-child relationship <u>so intrusive</u> as to be the equivalent of termination of that relationship") (emphasis added).

Defendants contend that Plaintiffs' § 1983 claims fail
"because there is no basis to support a finding of the requisite
element of a custom or policy which violates the Federal
Constitution or law, nor do the allegations rise to the level of
deliberate indifference to a constitutional right." *Def.s' Brief*
at 3.  They argue that Plaintiffs' § 1983 equal protection claim
must be dismissed because municipal liability cannot be assessed
against the District, nor its officers.  Id.  Defendants assert
that Plaintiffs have not pled the requisite facts to meet the
required elements of a § 1983 claim.  Id. at 4.

Specifically, Defendants argue that Plaintiffs do not
articulate a constitutional right, and thus they cannot allege
that they have been deprived of that right.  Id. at 4-5.  They
also contend that Plaintiffs have not articulated a "policy,
custom or practice that was enforced in such a way as to violate
rights or that in and of itself constituted a violation of
federal rights."  Id. at 5.  Defendants assert that the facts, as
pled in Plaintiffs' Complaint, indicate that the Defendants were
not "deliberately indifferent" to the rights of D. Doe.  Id. at
5-7.  Finally, Defendants argue that the facts as pled do not
indicate that the District's alleged negligent supervision or
training was the "moving force" behind a constitutional
violation.  Id. at 6.

Plaintiffs respond by arguing that Defendants' contention

-19-

regarding municipal liability is "premature and should be dismissed." *Plf.s' Brief* at 10.  They contend that they have asserted § 1983 claims under the 14th Amendment's due process and equal protection provisions.  Specifically, Plaintiffs assert a violation of their "due process liberty interests in personal integrity and security and freedom from restraint and infliction of pain at the hands of school employees." Id. at 11.  They argue an equal protection violation of "discrimination as members of an identifiable class (Native American) for the different treatment from those similarly situated students who were not Native American (white) with regard to discipline at school and treatment once that discipline was challenged[.]"  Id. at 11-12.

Plaintiffs contend that § 1983 claims require "no heightened" pleading requirement.  Id. at 13.  They argue that the facts, as they have alleged, adequately support their § 1983 claim, and thus they contend that dismissal is inappropriate. They request that, if the Court believes they have not adequately asserted their rights under § 1983, they be allowed to amend their complaint to further clarify their claim.  Id. at 13-14.

To establish a cause of action under § 1983, Plaintiffs must plead that "(1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." Gibson v. U.S., 781 F.2d 1334, 1338 (9th Cir. 1986), *cert. denied*, 479 U.S. 1054 (1987).

Municipalities and other local government entities are considered "persons" under § 1983.  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)).  Municipalities or political subdivisions are liable under § 1983 when the offending actions are taken "pursuant to official municipal policy."  Monell, 436 U.S. at 691.  A municipality may also be liable for a policy of inaction if such inaction amounts to a failure to protect constitutional rights.  City of Canton v. Harris, 489 U.S. 378, 388 (1989).  A municipality and/or local governmental unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability.  Brown, 520 U.S. at 403.

Plaintiffs must go beyond the *respondeat superior* theory and demonstrate that the alleged constitutional deprivation was the product of a "policy" or "custom" of the local governmental unit. Id.  Plaintiffs must demonstrate that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."  Id. at 404.  Thus, Plaintiffs must demonstrate a "direct causal link" between the municipalities' actions and the deprivation of the federal rights.  Id.  "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions

of its employees." Id. at 405.

There is no heightened pleading standard with respect to the "policy or custom" requirement of demonstrating municipal liability. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 167-68 (1993) (holding that "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later"). In the Ninth Circuit, "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual [] conduct conformed to official policy, custom, or practice.'" Karim-Panahi v. L.A. Police Dept., 839 F.2d 621, 624 (9th Cir. 1988) (citing Shah v. County of L.A., 797 F.2d 743, 747 (9th Cir. 1986)); see also Shaw v. Cal. Dept. of Alcoholic Beverage Control, 788 F.2d 600, 610 (9th Cir. 1986) ("[I]t is enough if the custom or policy can be inferred from the allegations of the complaint").

In their Complaint, Plaintiffs allege:

> School District 2A engaged in a custom and practice of tolerating and condoning abusive behavior of non-white students in the classroom settings.

> Defendants School District 2A, Willcutt, and Dolphay demonstrated deliberate indifference to the rights of plaintiffs in permitting and condoning the abuse of non-white students in district classrooms. . . .

-22-

> Defendants School District 23, Dolphay and
> Willcutt denied plaintiffs equal protection of the
> laws as afforded under the 14th amendment, and
> their liberty interests implicated by those
> protections, because they are nonwhite and tribal
> members by treating them differently and less
> favorably than similarly situated persons who are
> white or not tribal members.

*Plf.s' Compl.* at ¶¶ 33-34, 48.  Thus, Plaintiffs have alleged a

constitutional right, an equal protection violation, of which

they contend they were deprived.  They further allege that the

Defendants had a custom or practice of tolerating and condoning

abusive behavior toward Native American students in the classroom

settings and that Defendants' custom or practice amounted to

deliberate indifference of the Plaintiffs' constitutional right

Although Plaintiffs' factual allegations are thin, the Court

will not require more of Plaintiffs than the federal rules

require at the pleading stage.  <u>See</u> <u>Gilligan v. Jamco Dev. Corp.</u>,

108 F.3d 246, 249 (9th Cir. 1997).  From the face of the

pleadings, it may appear that "a recovery is very remote and

unlikely but that is not the test.  In reviewing the sufficiency

of a complaint, the issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims."  <u>Id</u>. (quoting <u>Scheuer v. Rhodes</u>,

416 U.S. 232, 236 (1974)) (internal citations and quotation marks

omitted).

Thus, the Court finds that Plaintiffs have adequately asserted

their rights under § 1983 to prevent a motion to dismiss.  Thus,

Defendants' motion to dismiss Plaintiffs' § 1983 claims will be
denied.

### d.   Qualified Immunity

Defendants argue that Plaintiffs' § 1983 claims against
Superintendent Willcutt and Board Chair Dolphay should be
dismissed because they are entitled to qualified immunity.
*Def.s' Brief* at 13.  They assert that they were acting on behalf
of the District, in their official capacities, within the scope
and course of their employment with the District.  Willcutt and
Dolphay contend that "they took no action which they knew or
should have known was violative of any of the Plaintiffs'
constitutional rights."  Id.  They argue that in this instance,
Willcutt "was exercising her discretion" in conducting her
investigation, disciplining the teacher, and assigning D. Doe to
a different classroom.  Id. at 14.

Defendants contend that her conduct did not violate any
clear constitutional right.  Id.  They assert that the proper
inquiry for the Court to apply, is whether there is a clearly
established federal law which defines precisely how Willcutt and
Dolphay should have responded to Newby's actions.  *Def.s' Reply
Brief* at 7.  Defendants contend that Plaintiffs have provided no
reference to any such law.  Id. at 7.  They assert that the facts
as alleged do not indicate that Willcutt or Dolphay's actions
violated a constitutional right, and the constitutional right was

-24-

not clearly established so that a reasonable official would understand that his or her actions violated that right, and thus, Willcutt and Dolphay are shielded from liability. *Def.s' Brief* at 15-16.

Plaintiffs respond by arguing that their constitutional rights were clearly established at the time of the events in their Complaint. *Plf.s' Brief* at 14. Plaintiffs contend that their 14th Amendment right to be free from unjustified intrusion on personal security at the hands of school employees was clearly established as early as 1977. Id. at 15. They assert that there is no question that Willcutt and Dolphay's conduct was clearly established, and that neither "could not believe that their inactions and actions were reasonable[.]" Id. Finally, Plaintiffs argue that if the Court finds that qualified immunity should be granted, they seek leave to amend their Complaint to more fully address the allegations of conduct by Willcutt and Dolphay. Id. at 16.

Public school officials are entitled to assert a qualified immunity defense. See Wood v. Strickland, 420 U.S. 308, 318 (1975). Qualified immunity "protects § 1983 defendants from liability for civil damages when performing discretionary functions, unless such conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Jackson v. City of Bremerton, 268 F.3d 646,

650-51 (9th Cir. 2001)(citing Anderson v. Creighton, 483 U.S.
635, 640 (1987)).  Qualified immunity provides a protection to
government officials that is quite far-reaching.  "[I]t
safeguards 'all but the plainly incompetent or those who
knowingly violate the law. . . .  [I]f officers of reasonable
competence could disagree on th[e] issue [whether a chosen course
of action is constitutional], immunity should be recognized."
Brewster v. Bd. of Educ. of Lynwood Unified School Dist., 149
F.3d 971, 977 (9th Cir. 1998) (quoting Malley v. Briggs, 475 U.S.
335, 341 (1986)).

     The standard for determining qualified immunity is
objective.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The
United States Supreme Court has set out a two-prong test for
evaluating qualified immunity's availability.  Saucier v. Katz,
533 U.S. 194 (2001).  First, under Saucier, courts must consider
"whether plaintiff's allegations, if true, establish a
constitutional violation."  Hope v. Pelzer, 536 U.S. 730, 736
(2002)(citing Saucier, 533 U.S. at 201).  If, in viewing the
facts in the light most favorable to the party asserting injury,
such a violation occurred, courts must then ask "'whether the
right was clearly established . . . in light of the specific
context of the case' such that 'it would be clear to a reasonable
officer that his conduct was unlawful in the situation he
confronted.'"  Headwaters Forest Defense v. County of Humboldt,

276 F.3d 1125, 1129 (9th Cir. 2002)(quoting <u>Saucier</u>, 533 U.S. at 201).

In their Complaint, Plaintiffs have alleged that it was Newby that improperly disciplined and/or assaulted D. Doe.  <u>See</u> *Plf.s' Compl.* at ¶¶ 12-14, 20, 30.  Plaintiffs' allegations against Willcutt as Principal and Superintendent were that she failed in her duties to not only supervise and discipline Newby, but also failed in her duties to protect D. Doe and other non-white students from abuse while being disciplined.  <u>Id</u>. at ¶¶ 31, 34-36.  Further, Plaintiffs' allegations against Dolphay as Chairman of the Board of Trustees was that he "demonstrated deliberate indifference to the rights of [P]laintiffs in permitting and condoning the abuse of non-white students in district classrooms."  <u>Id</u>. at ¶ 34.  The Complaint, however, makes no allegations that Willcutt, nor Dolphay, actually assaulted D. Doe.

Plaintiffs have provided that the right of a student to be free from excessive force at the hands of teachers employed by the state was clearly established as early as 1990.  <u>See</u> <u>P.B. v.</u> <u>Koch</u>, 96 F.3d 1298, 1303 n. 4 (9th Cir. 1996).  But Plaintiffs have not provided, nor could the Court find, any clearly established law on how a Superintendent and/or Board Chair are to respond to, discipline, and supervise a teacher that used improper physical abuse against a student, such as D. Doe.

-27-

For the law to be "clearly established," "[t]he contours of the right" must be sufficiently clear that a reasonable official would understand that his conduct violates that right.  <u>Anderson</u>, 483 U.S. at 640.  It is not necessary that the "very action in question has previously been held unlawful, . . . but it is to say that in light of preexisting law the unlawfulness must be apparent" to the official.  <u>Id</u>.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted."  <u>Saucier</u>, 533 U.S. at 202.  The Court believes that Plaintiffs cannot satisfy this requirement.

In their response brief, Plaintiffs cite cases which they allege set forth the "clearly established" law upon which Willcutt and Dolphay should have reasonably known.  However, these cases examined the actions of the actual perpetrator of the abuse against the students.  For example, in <u>Koch</u>, 96 F.3d at 1303, the Court found that a high school principal was not entitled to qualified immunity for his use of excessive force against students which included slapping, punching, and choking the students.  In fact, the record in some of these cases supports the granting of qualified immunity to Willcutt and Dolphay.  <u>See</u> <u>Meeker v. Edmundson</u>, 415 F.3d 317, 319 (4th Cir. 2005) (District Court dismissed the § 1983 claims against all

defendants, including the school's principal, superintendent, and chairman of the school board, except the coach who allegedly abused the students).

While the Court realizes that there does not need to be a case that deals with the exact facts in order to find Willcutt and Dolphay's conduct unreasonable, there must be some clearly established law to give Willcutt and Dolphay "clear notice" that their conduct is unconstitutional.  See Headwaters Forest Def., 276 F.3d at 1131; Brewster 149 F.3d at 977.

For this reason, the Court finds that Willcutt and Dolphay are entitled to qualified immunity because Plaintiffs' allegations fail to state a claim for violation of a "clearly established" law that a reasonable person would have known.  See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (Because qualified immunity is an affirmative defense from suit, not merely from liability, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery").  Based on the foregoing, the Court will grant Defendants' motion to dismiss Plaintiffs' § 1983 claims against Willcutt and Dolphay.

Dismissal in this instance, however, will be without prejudice to amendment of the individual § 1983 claims.  A pleader should be allowed an opportunity to amend unless

-29-

amendment would be futile.  IDACORP, 379 F.3d at 647; see also
Ramirez, 334 F.3d at 861 (holding that leave to amend should be
granted more liberally to pro se litigants).  Here, the Court
will allow the Plaintiffs an opportunity to amend to cure the
shortcomings in their individual § 1983 claims.

### e.   Punitive Damages

Defendants seek dismissal of Plaintiffs' request for
punitive damages under their § 1983 claims.  *Def.s' Brief* at 20.
Considering the Court's decision above, the only remaining
Defendant Plaintiffs' can seek punitive damages against is the
District.  Plaintiffs have clarified that they do not seek
punitive damages against the District pursuant to their § 1893
claims.  *Plf.s' Brief* at 20.

Accordingly, the Court will grant this portion of
Defendants' motion.

### B.   STATE LAW CLAIMS

Count III of Plaintiffs' Complaint alleges violation under
Montana state law.  *Plf.s' Compl.* at ¶¶ 50-52.  First, Plaintiffs
allege a claim of assault, battery, and abuse upon a minor.  They
assert that "Newby committed upon D. Doe, an assault, a battery
and a abuse of a minor in violation of state laws."  Plaintiffs
contend Newby is liable to D. Doe for compensatory and punitive
damages.  Id. at ¶ 50.  Second, Plaintiffs allege a claim of
negligent hiring, training, orientation, and supervision.  They

contend that the District and Willcutt negligently supervised
Newby as D. Doe's teacher and that they "negligently failed to
orient and train her."  <u>Id</u>. at ¶ 51.  Further, they assert that
Willcutt engaged in "gross negligence and in a reckless or
conscious disregard of the risk to the safety and welfare of D.
Doe" in employing Newby and placing her as D. Doe's teacher
without proper training, orientation, or supervision.  Plaintiffs
contend that Willcutt is liable to D. Doe for punitive damages.
<u>Id</u>. at ¶ 52.

### 1.   Johnson's Standing

The Court notes that in their initial motion brief
Defendants did not move to dismiss Johnson's state law claims for
lack of standing.  <u>See</u> *Def.s' Brief* at 9-13.  However, in
Plaintiffs' response brief, Plaintiffs state "[f]inally,
regarding Johnson's state law claims, defendants assert no
authority for the contention that Johnson is not entitled to her
claims of negligence against defendants."  *Plf.s' Brief* at 19.
Thus, Defendants in their reply brief addressed this issue.
*Def.s' Reply Brief* at 12.  Because this issue has not been
properly briefed, the Court will deny the motion.

### 2.   Preemption

Defendants argue the Plaintiffs' state law claims must be
dismissed because "Title VI completely defines the rights and
remedies for the alleged racial discrimination, [and thus,]

preempts the state tort claims." *Def.s' Brief* at 9.  They
contend that Plaintiffs' negligence claims are preempted because
"allowing a state tort claim in negligence conflicts with
Congress' objectives in Title VI which requires proof of
intentional discrimination."  Id. at 10.

Plaintiffs respond by arguing that the Court should deny
Defendants' motion because "[t]hey cite no authority for this
novel proposition[.]" *Plf.s' Brief* at 5.  They assert that the
Rules of Civil Procedure allow them to plead both state claims in
negligence and Title VI claims for intentional discrimination.
Id.  Plaintiffs contend that "there is nothing internally
inconsistent with pleading a claim of intentional discrimination
on the one hand and claims of negligence in training,
supervision, or other conduct of the entity's operations."  Id.
at 5-6.  They argue that there is no conflict with their Title VI
and state negligence claims because Title VI addresses only
intentional discrimination based on race and national origin
against a recipient of federal funds and the state claims provide
redress for a breach of a duty.  Id. at 6.

The Court finds Defendants' arguments unpersuasive.  To
determine whether a state statute is preempted by federal law,
the Court's task is to ascertain the intent of Congress.  Cal.
Fed. Savings & Loan Assoc. v. Guerra, 479 U.S. 272, 280 (1987).
State law may be superseded by federal law in one of three ways:

(1) Congress may expressly preempt state law; (2) congressional intent to preempt state law may be inferred; or (3) federal law may preempt state law if the state law actually conflicts with the federal law.  Id. at 280-81.

Title 42 U.S.C. § 2000h-4 of the Civil Rights Act, provides:

> Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof.

(Emphasis added).  Thus, the only way Plaintiffs' Title VI claims will preempt their state law claims is if their state law claims actually conflict with the federal law.  Conflict can occur in two ways.  Either "because 'compliance with both federal and state regulations is a physical impossibility,' or because the state law stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Cal. Fed. Savings & Loan, 479 U.S. at 281 (internal citations omitted).

Plaintiffs have raised two separate claims: (1) the District's alleged violation of Title VI "by intentionally discriminating against each [Plaintiff] due to race and/or national origin because they are non-white (Native American)" (Plf.s' Compl. at ¶ 44); and (2) Newby's assault and battery upon

-33-

D. Doe; the District and Willcutt's negligent hiring, training, orientation, and supervision of Newby as D. Doe's teacher; and Willcutt's negligence in employing Newby and assigning her to be D. Doe's teacher, without proper training, orientation or supervision.  Id. at ¶¶ 50-52.  Compliance with Title VI and these state laws is not a "physical impossibility."  Nor do Plaintiffs' state law claims obstruct Congress' purposes and objectives behind Title VI.  Accordingly, Plaintiffs' state law claims do not conflict with Plaintiffs' federal claim.  Thus, their Title VI claim does not preempt their state law claims.

Based on the foregoing, the Court will deny Defendants' motion to dismiss Plaintiffs' state law claims.

### 3.   Exclusive Remedy

Defendants contend that if Plaintiffs' negligence claims are not preempted by Title VI, then Montana state law applies and Plaintiffs' exclusive remedy for their state law claims are before the Montana Human Rights Bureau (hereafter "MHRB").  *Def.s' Brief* at 11.  Relying on Mont. Code Ann. § 49-2-509, they argue that until a party files a complaint for racial discrimination or harassment before the MHRB, the party may not file a case in district court.  Defendants assert that the racial discrimination alleged by Plaintiffs forms the "gravamen" of their Complaint.  Id. at 12; *Def.s' Reply Brief* at 4.  They argue that absent the abuse by Newby, which they claim is the

-34-

underpinnings of Plaintiffs' racial discrimination claim,
Plaintiffs have no damages and no tort claims.  Therefore,
Defendants contend that because Plaintiffs did not file a claim
before the MHRB, Plaintiffs' negligence claims must be dismissed
for failure to exhaust their exclusive administrative remedy.
*Def.s' Brief* at 13.

Plaintiffs respond that in this action they seek to enforce
their federal rights against racial discrimination, but also
their "state law rights as citizens, as student, as custodial
grandmother - in claims for violation of bodily integrity,
excessive corporal punishment, negligence, assault and batter[y],
parent-child relationships[,]" which are rights independent of
their race discrimination claim.  *Plf.s' Brief* at 7.[9]  They
contend that the Montana Supreme Court has found that parallel
remedies may be available.  Plaintiffs argue that they have not
pled discrimination under Title 49 of the Montana Code, nor do
their negligence claims allege violation of Title 49.  Id. at 8.
They assert that a plain review of their Complaint, indicates
that race discrimination is not their exclusive allegation.  Id.
at 9.

The Court finds Plaintiffs' argument unconvincing and will
grant Defendants' motion.  Although Plaintiffs have raised two

---

[9] The Court notes that Plaintiffs "recognize the need for
clarification of their claims."

separate claims, their state law claims rely on the same facts
and allegations as their federal claims.  Mont. Code Ann. § 49-2-
509(7) provides that:

> The provisions of this chapter establish the
> <u>exclusive remedy</u> for acts constituting an alleged
> violation of chapter 3 or this chapter, including
> acts that may otherwise also constitute a
> violation of the discrimination provisions of
> Article II, section 4, of the Montana constitution
> or 49-1-102.  A claim or request for relief based
> upon the acts may not be entertained by a district
> court other than by the procedures specified in
> this chapter.

(Emphasis added).  The Montana Human Rights Act (hereafter
"MHRA") applies to this case because it specifically prohibits
educational institutions from discriminating against a student on
the basis of race.  Mont. Code Ann. § 49-2-307; <u>see also</u> <u>Dupris</u>
<u>v. Bd. of Trustees</u>, 2006 MT 3, ¶ 17, 330 Mont. 232, ¶ 17, 128
P.3d 1010, ¶ 17 (holding that MHRA establishes the exclusive
remedy for conduct violating Mont. Code Ann. § 49-2-307).

Plaintiffs contend that their state negligence claims do not
fall within the MHRA, and thus, they were under no obligation to
exhaust administrative remedies.  In <u>Harrison v. Chance</u>, 244
Mont. 215, 797 P.2d 200 (1990), the plaintiff made the same
argument.  Plaintiff argued that her claim was not limited to the
MHRB because in addition to sexual harassment, the defendant
committed a variety of torts against her which provide separate
causes of action.  The Court found that although her employer's
alleged acts provided grounds for various tort claims, the

"gravamen of the [plainitff's] claim [wa]s sexual harassment."
<u>Harrison</u>, 244 Mont. at 223, 797 P.2d at 205.

The Court stated that, "[a]s in this case, any claim based
on sexual harassment can be framed in terms of numerous tort
theories." <u>Id</u>.  It noted that when the legislature enacted § 49-
2-509(7), it expressed its intent that the Montana Human Rights
Commission provide the exclusive remedy for illegal
discrimination.  The Court found that "to allow such re-
characterization of what is at heart a sexual discrimination
claim, would be to eviscerate the mandate of the Human Rights
Commission." <u>Id</u>.

Plaintiffs argue that the Montana Supreme Court has found
that parallel remedies may be available. *Plf.s' Brief* at 8.  In
<u>Shields v. Helena School District No. 1</u>, 284 Mont. 138, 943 P.2d
999 (1997), the Court dealt with the issue of two sets of claims
with two sets of remedies.  Plaintiffs brought federal claims
available through the Individuals with Disabilities in Education
Act ("IDEA") and discrimination claims based on state tort law
accessible through the MHRA.  In <u>Shields</u>, the Court found that
the plaintiffs needed to exhaust both the IDEA administrative
procedures, as well as the MHRA administrative procedures, prior
to pursuing their claims in district court.  284 Mont. at 148,
150, 943 P.2d at 1005-6.  The Court in <u>Shields</u>, however, never
suggested "a preference for one statutory scheme over the other -

-37-

we simply required administrative exhaustion pursuant to two appropriate, independent procedures which may in some circumstances provide cumulative remedies." See Great Falls Public Schools v. Johnson, 2001 MT 95, ¶ 24, 305 Mont. 200, ¶ 24, 26 P.3d 734, ¶ 24.

In Johnson, the Court held that the disabled student may proceed with her MHRA claim prior to exhaustion of or without ever invoking the IDEA's administrative remedies. Id. ¶ 29. It found no legal basis for determining that the IDEA limited state human rights laws pertaining to discrimination claims. Id. The Court held that the MHRA "may offer an independent remedy provided the claim is grounded in discrimination." Id. at ¶ 30.

Neither Shields, nor Johnson, however, stand for the proposition that Plaintiffs can avoid the MHRA exclusive remedy and exhaustion requirements by pursuing some other tort remedy, and/or, pleading a separate federal claim. Plaintiffs have raised three separate claims. The Court will not state a preference for one statutory scheme over the other. Plaintiffs have the right to seek relief under state law, but if Plaintiffs' state law claims fall within the MHRA, they are required to exhaust administrative requirements.

In their brief, Plaintiffs attempt to distinguish Newby's liability for the racial discrimination from Defendants' liability to hire, train, orient and supervise her. *Plf.s'*

-38-

*Brief* at 7-8.  Defendants may have had a duty to hire, train, orient and supervise Newby, and in fact, may have breached that duty, but the damages Plaintiffs claim arose out of Newby's alleged discrimination and assault to D. Doe.  Simply put, if Newby had not discriminated against D. Doe because he was a Native American, Plaintiffs would not have viable claims against the District or Willcutt for negligent supervision.  As the Court in <u>Harrison</u> noted, for the Court to allow such re-characterization of what is at heart a racial discrimination claim, would be to "eviscerate the mandate of the Human Rights Commission."  <u>Harrison</u>, 244 Mont. at 223, 797 P.2d at 205.

Accordingly, based on the foregoing, the Court finds that Plaintiffs' state law claims, contained in Count III of their Complaint, are preempted by the MHRA.  Plaintiffs are required to first exhaust their administrative remedies with the Montana Human Rights Commission before bringing the claims in this Court. Consequently, Count III, as it relates to Defendants Dodson Public Schools, District No. 2-A(C) and DollyAnn Willcutt, will be dismissed without prejudice.

Therefore, the Court need not discuss Defendants' remaining arguments regarding Plaintiffs' state law claims.

### C.   PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Within the text of their response brief, Plaintiffs' request leave to amend their Complaint to add an additional § 1983 claim

under the 4th Amendment for "protection against excessive force for the established right of a student to be free [from] excessive force and arbitrary and excessive corporal punishment." *Plf.s' Brief* at 9 fn. 1; 11.  Leave to amend will be granted.[10]

**V.**   **CONCLUSION**

Based on the foregoing, IT IS HEREBY ORDERED that:

(1)  Defendants' Motion to Dismiss (*Court's Doc. No. 4*) is **GRANTED** in part and **DENIED** in part.

(a)  **Count I - Title VI:**

(i) Defendants' motion to dismiss Plaintiffs' Title VI claims against Defendants Willcutt and Dolphay are **granted.**

(ii) Defendants' motion to dismiss Johnson's individual Title VI claim for monetary damages against the Dodson Public Schools, District No. 2-A(C) is **granted.**  Johnson's individual claim under Title VI for monetary damages is **dismissed.**

(iii) Defendants' motion to dismiss Plaintiffs' punitive damage claim under Title VI is **granted.**

(b)  **Count II - 42 U.S.C. § 1983:**

---

[10] Including a motion or a "request" for a ruling in the text of a brief is not proper under the local rules.  A separate motion is required.  Local Rule 10.1(f) provides that in the caption of the parties' document "a title describing the document filed" must be included.  Plaintiffs did not indicate in their caption that they were filing a motion for leave to amend their Complaint.

(i) Defendants' motion to dismiss Plaintiffs' §
1983 statutory Title VI claim is **granted.**

(ii) Defendants' motion to dismiss Plaintiffs' §
1983 claims against Defendants Willcutt and Dolphay is **granted.**
Plaintiffs' § 1983 claims against Defendants Willcutt and Dolphay
are **dismissed** without prejudice.

(iii) Defendants' motion to dismiss Plaintiffs'
punitive damage claim is **granted.**

(c) **Count III - State Law Claims:** Defendants' motion
to dismiss Plaintiffs' state law claims for failure to exhaust
exclusive administrative remedies is **granted.** Plaintiffs' state
law claims as they relate to Defendants Dodson Public Schools,
District No. 2-A(C) and DollyAnn Willcutt, are **dismissed** without
prejudice.

(d) Other than as granted above, Defendants' motion to
dismiss is **denied.**

(2) On or before **Friday, May 19, 2006,** Plaintiffs may file
an Amended Complaint consistent with this Order.

DONE and DATED this 4th day of May, 2006.


                                        **/S/** Carolyn S. Ostby
                                        Carolyn S. Ostby
                                        United States Magistrate Judge

-41-