IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| DARLA JOHNSON, individually and o/b/o D. Doe, a minor,<br><br>                Plaintiffs,<br><br>vs.<br><br>DODSON PUBLIC SCHOOLS, DISTRICT NO. 2-A(C) and MISTY NEWBY,<br><br>                Defendants. | CV-05-39-GF-CSO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NEWBY'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

Plaintiffs Darla Johnson ("Johnson"), individually and on behalf of her grandson, D. Doe (collectively referred to as "Plaintiffs"), seek damages and equitable relief against Defendants Dodson Public Schools, District No. 2-A(C) ("Dodson School District") and Misty Newby ("Newby") for violation of their rights under 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964. *See Plf.s' Amend. Compl.* at ¶ 1. Plaintiffs also seek damages and equitable relief against Newby for violation of Montana state law. *Id.* By Notice filed March 2, 2006, upon the parties' consent, the Clerk of Court transferred this case to the undersigned for all purposes. *See Court's Doc. No. 23.*

-1-

Before the Court is Newby's fully briefed Motion for Judgment on the Pleadings.  See *Court's Doc. Nos. 29*, *38, & 39*. Upon agreement of the parties, the Court granted the State of Montana ("State") leave to file an amicus brief on Newby's motion.  The State filed its amicus brief on October 5, 2006, and the parties have responded to it.  See *Court's Doc. Nos. 51, 52*, *53*, & *57*.

Having reviewed the motion and the parties' briefs in support of their respective positions, the Court is prepared to rule.

## I.   ALLEGATIONS OF COMPLAINT

Pursuant to the Court's May 5, 2006, Order (*Court's Doc. No. 24*), granting in part and denying in part Defendants'[1] motion to dismiss (*Court's Doc. No. 4*), Plaintiffs filed their First Amended Complaint on June 14, 2006.  See *Court's Doc. No. 27*. Plaintiffs allege that on or about, April 7, 2003, Newby placed D. Doe, a student in her fourth grade class, in the corner because he was talking during class without permission.  *Plf.s' Amend. Compl.* at ¶¶ 8-9.  Plaintiffs contend that while in the corner, Newby bound D. Doe's hands behind his back with clear duct tape, and placed clear duct tape over his mouth.  Id. at ¶ 10.  D. Doe was left in this position for an extended period of

_____

[1] This motion was brought by Defendants Dodson School District, DollyAnn Willcutt, and Robert Dolphay.

-2-

time, and eventually Newby tore the tape from his wrists and mouth leaving red tender skin.  Id. at ¶¶ 11-12.

On or about April 15, 2003, Johnson learned of the incident, and inquired with D. Doe, who confirmed that Newby bound his hands and taped his mouth on this occasion, and on separate occasions.  Id. at ¶¶ 13-14.  The next day, Johnson contacted Superintendent DollyAnn Willcutt ("Willcutt") to report the incident.  Johnson expressed her concern for the safety of D. Doe, and her concern about Newby teaching in the classroom.  Id. at ¶ 15.

Johnson called Willcutt the next day and Willcutt confirmed that the incident had occurred and that Newby would be "reprimanded."  Later that day, Newby called Johnson to explain why she had bound and taped D. Doe.  By letter dated April 22, 2003, Willcutt informed Johnson that she had "addressed concerns over issues that have occurred in your child's classroom."  Id. at ¶¶ 16, 17.

Plaintiffs allege that on April 23, 2003, Newby saw D. Doe in the lunchroom and struck him in the back of the head causing him pain.  Id. at ¶ 18.  After learning of this incident, Johnson contacted Willcutt and requested that Newby not be around D. Doe without another adult present.  Plaintiffs contend that, as a result, D. Doe was taken out of Newby's classroom and placed in a hallway, while Newby continued to teach.  Id. at ¶ 19.

-3-

Johnson contacted the Dodson School District to discuss her concerns regarding the treatment of D. Doe.  She was told she needed to be placed on the Board of Trustees' agenda in order to express her concerns.  Johnson made arrangements to do so.  Id. at ¶ 21.

Johnson attended a board meeting on May 13, 2003, which was presided over by Robert Dolphay ("Dolphay"), Chairman of the Board of Trustees.  Johnson was not allowed to speak during the regular agenda, as requested.  She was only permitted to address the Board during the "public comment" period, in which there was no interaction with the Board.  Plaintiffs contend that she was only allowed to speak in "generalities without the use of names to describe her concerns."  Id. at ¶ 22.  At the meeting, several Dodson School teachers spoke in favor of Newby and her behavior, they also spoke in favor of excusing her actions.  No action was taken by the Board of Trustees.  Id. at ¶ 23.

On May 15, 2003, Johnson allegedly received a call informing her that teachers at Dodson School were told to record any negative behavior they might see by D. Doe.  Id. at ¶ 24.  The First Amended Complaint does not identify who placed this call.  Johnson also learned that in the past Newby had taped and bound other Native American students.  Id. at ¶ 25.  The Amended Complaint does not allege how she obtained this information.  Having concerns for D. Doe's safety and his ability to learn in

-4-

such an environment, Johnson removed D. Doe from Dodson School District.  Id. at ¶ 26.

Plaintiffs' First Amended Complaint states three counts. Count I alleges that Defendant Dodson School District violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*  Id. at ¶¶ 41-43.  Count II, based on 42 U.S.C. § 1983, alleges violations of the Fourth and Fourteenth Amendments.  Id. at ¶¶ 44-46.  Plaintiffs do not clearly specify which Defendants are named in Count II but, read liberally, this count names all Defendants.  Count III alleges state law claims against Defendant Newby for assault, battery, and abuse upon a minor.  Id. at ¶ 47.

In their prayer for relief, Plaintiffs request an order enjoining Defendants "from engaging in further discrimination against any student or parent because of race or national origin"; compensatory damages; punitive damages; an order for each Defendant to take actions necessary to make Plaintiffs whole and to minimize the likelihood of future violations by Defendants; Plaintiffs' costs, including attorney's fees; and such other legal or equitable relief as deemed just.  Id. at pg. 11.

## II.  <u>RULE 12(C) DISMISSAL STANDARDS</u>

"After the pleadings are closed, but within such time as not to delay the trial, any party may move for a judgment on the pleadings." *Fed. R. Civ. Pro. 12(c)*.  "Rule 12(c) is a vehicle

for summary adjudication, but the standard is like that of a motion to dismiss." Durkin v. Shields, 1997 WL 808651, *8 (S.D. Cal. 1997) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). Judgment on the pleadings is proper "'when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.'" Milne ex rel. Coyne v. Stephen Slesing, Inc., 430 F.3d 1036, 1042 (9th Cir. 2005) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001)).

As with Rule 12(b)(6) motions, the Court must assume the truthfulness of the material facts alleged in the complaint. Moreover, all inferences reasonably drawn from these facts must be construed in favor of the Plaintiffs. Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989), *cert. denied*, 493 U.S. 1079 (1990). A defendant is not entitled to judgment on the pleadings if the complaint raises issues of fact which, if proved, would support recovery. Id.

"The motion must be denied unless it appears 'to a certainty' that no relief is possible under any state of facts the plaintiff could prove in support of his or her claim." Benas v. Baca, 2001 WL 485168, *2 (C.D. Cal. 2001) (quoting Mostowny v. U.S., 966 F.2d 668, 672 (Fed. Cir. 1992)). As with Rule 12(b)(6) motions, it is immaterial whether the Court believes that the

plaintiff will succeed at trial.  <u>Id</u>.

III. **<u>PARTIES' ARGUMENTS</u>**

Newby argues that she is entitled to judgment on the pleadings because the "only claim asserted against [her] arises from her allegedly racially motivated assault and battery against D. Doe, for which the Montana Human Rights Act provides the exclusive remedy."  *Newby's Mot. Judm. on the Pleadings* (hereafter "*Newby's Mot.*") at 1.  She contends that the Court in its May 5, 2006, Order on Defendants' motion to dismiss, "recognized that the gravamen of the claim against Newby is racial discrimination."  *Newby's Brief in Support of Mot. for Judm. on the Pleadings* (hereafter "*Newby's Brief*") at 4.  Newby asserts that although Plaintiffs have "styled" their claims against her as an assault and battery, the Montana Supreme Court has recognized that the exclusive remedy provision of the Montana Human Rights Act ("MHRA") "cannot be avoided by styling claims under other theories."  <u>Id</u>. at 5.

In response, Plaintiffs argue that Newby has mischaracterized the gravamen of their complaint.  *Plf.s' Brief in Opposition to Def. Newby's Mot. for Judm. on the Pleadings* (hereafter "*Plf.s' Brief*") at 4.  They contend that the gravamen of their complaint is that Newby committed an assault and battery upon D. Doe, regardless of her motivation or her position.  <u>Id</u>.  Plaintiffs assert that the exclusive remedy provision of the MHRA

-7-

"has no application to this case unless the assault and battery on [D.] Doe was racially motivated." Id. at 6-10. Finally, they argue that application of the MHRA exclusive remedy provision diminishes D. Doe's legal rights because of his race and because he was a victim of a racially motivated assault. Plaintiffs contend that the exclusive remedy provision violates the Fourteenth Amendment to the United States Constitution because it denies D. Doe his due process and equal protection rights. Id. at 10-15.

IV.   DISCUSSION

    A.   PROCEDURAL ISSUES

        1.   Timeliness

A motion for judgment on the pleadings must be brought "after the pleadings are closed and within such time as to not delay the trial." *Fed. R. Civ. Pro. 12(c)*. The close of pleadings refers to the time when all required or permitted pleadings have been served and filed. See Doe v. U.S., 419 F.3d 1058, 1061 (9th Cir. 2005); see also Stands Over Bull v. B.I.A., 442 F.Supp. 360, 367 (D. Mont. 1977).

Newby filed her answer to Plaintiffs' First Amended Complaint on June 20, 2006. See *Court's Doc. No. 28*. She filed her motion for judgment on the pleadings on the same day. See *Court's Doc. No. 29*. Dodson School District did not file its answer to Plaintiffs' First Amended Complaint until July 6, 2006.

<u>See</u> *Court's Doc. No. 31.* Newby's motion technically was premature, therefore, because the pleadings were not "closed" when she filed her motion. Plaintiffs did not raise a timeliness objection to the motion.

Newby's arguments relate solely to Count III[2] of Plaintiffs' First Amended Complaint and only Newby is named in Count III. <u>See</u> *Plf.s' Amend. Compl.* at ¶ 47. Thus, with respect to Count III, the pleadings were "closed" because Newby filed her motion along with her answer. <u>Doe</u> and <u>Stands Over Bull</u> are distinguishable on this basis. Thus, the Court does not find it appropriate to deny the motion as premature.

### 2. **Extrinsic Evidence**

Plaintiffs' response brief refers to material outside the pleadings. <u>See</u> *Plf.s' Response Brief* at Ex. 1. This was improper because a motion for judgment on the pleadings is limited to matters presented in the pleadings. <u>See</u> <u>Hal Roach Studios, Inc. v. Richard Feiner & Co. Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1990) (holding that "judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue"). Rule 12(c) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed

---

[2] As the Court discusses, *infra*, no argument is provided regarding judgment on the pleadings for Count II.

of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Fed. R. Civ. Pro. 12(c)*.

There is no need to rely on Plaintiffs' document for purposes of this motion. Accordingly, the Court will disregard Plaintiffs' exhibit in ruling on this 12(c) motion.

### B.   COUNT II - 42 U.S.C. § 1983 CLAIM

Count II of the Plaintiffs' First Amended Complaint is brought under 42 U.S.C. § 1983 ("§ 1983"). *Plf.s' First Amend. Compl.* at ¶¶ 44-46. As the Court stated, *supra*, Plaintiffs do not clearly specify which Defendants are named in Count II but, read liberally, this count includes a claim against Newby. In her answer, Newby denies Plaintiffs' § 1983 allegations and alleges a qualified immunity affirmative defense. <u>See</u> *Newby's Ans. to First Amend. Compl.* at ¶¶ 44-46; pg. 8-9.

In her motion, Newby moved for judgment on the pleadings. Her briefing, however, offers no explanation why Count II of Plaintiffs' First Amended Complaint should be dismissed. Accordingly, the Court denies Newby's motion for judgment on the pleadings as to Count II of Plaintiffs' First Amended Complaint.

### C.   COUNT III - STATE LAW CLAIM

Count III of Plaintiffs' First Amended Complaint alleges state law claims against Newby of assault, battery, and abuse upon D. Doe, a minor. *Plf.s' First Amend. Compl.* at ¶ 47.

Plaintiffs contend Newby is liable for both compensatory and punitive damages.  *Id*.  Newby denies Plaintiffs' allegations. *Newby's Ans. to First Amend. Compl.* at ¶ 47.

### 1.   Statutory Interpretation

Newby argues in her motion that judgment as a matter of law should be granted because the "gravamen" of Plaintiffs' claim against Newby is racial discrimination.  *Newby's Brief* at 4.  She asserts that although Plaintiffs' Count III is styled as an assault and battery claim, the claim centers on her alleged acts of racial discrimination.  *Id*. at 5.  Newby contends that because the claim is based on these alleged acts, the MHRA provides the exclusive state law remedy, and thus Count III of Plaintiffs' First Amended Complaint should be dismissed with prejudice.  *Id*. at 6.

Plaintiffs respond that the gravamen of their complaint is that Newby committed an assault and battery upon D. Doe, and that Newby's motivation and her position as an agent of the school district were secondary.  *Plf.s' Brief* at 4.  They contend that there is "no question" that D. Doe should be able to assert a claim for assault and battery against Newby, and that the "fact that [D.] Doe and Newby are of different races cannot legally or rationally bar him from asserting that claim."  *Id*. at 5.

Plaintiffs contend that "the facts of the incident in April 2003, not legal theory, raise a prima facie case of a physical

assault on [D.] Doe motivated in whole or in part by his race and
national origin." Id. at 6.  Plaintiffs argue that this case is
distinguishable from other decisions by the Montana Supreme Court
that interpreted the exclusive remedy provision.  Id. at 8.  They
contend that in those cases, "the plaintiff failed to comply with
the administrative procedures of Title 49 in seeking a remedy for
misconduct that was motivated in whole or in part by a
discriminatory animus."  Id.

     The Court finds Plaintiffs' arguments unconvincing.  Montana
Code Annotated § 49-2-509(7) provides that:

> The provisions of this chapter establish the
> exclusive remedy for acts constituting an alleged
> violation of chapter 3 or this chapter, including
> acts that may otherwise also constitute a
> violation of the discrimination provisions of
> Article II, section 4, of the Montana constitution
> or 49-1-102.  A claim or request for relief based
> upon the acts may not be entertained by a district
> court other than by the procedures specified in
> this chapter.

(Emphasis added).  This exclusive remedy provision was first
recognized by the Montana Supreme Court in Harrison v. Chance,
244 Mont. 215, 223, 797 P.2d 200, 205 (1990), and has been
consistently reaffirmed.  See, e.g., Dupris v. Bd. of Trustees,
2006 MT 3, ¶ 17, 330 Mont. 232, ¶ 17, 128 P.3d 1010, ¶ 17; Arthur
v. Pierre Ltd., 2004 MT 303, ¶¶ 18, 27, 323 Mont. 453, ¶¶ 18, 27,
100 P.3d 987, ¶¶ 18, 27; Bruner v. Yellowstone County, 272 Mont.
261, 267, 900 P.2d 901, 905 (1995); Frandrich v. Capital Ford
Lincoln Mercury, 272 Mont. 425, 431, 901 P.2d 112, 115 (1995);

and <u>Hash v. U.S. West Communs. Servs.</u>, 268 Mont. 326, 332, 886
P.2d 442, 446 (1994).

The MHRA applies here because it specifically prohibits
educational institutions from discriminating against a student on
the basis of race.  <u>See</u> Mont. Code Ann. § 49-2-307(1) ("It is an
unlawful discriminatory practice for an educational institution
to . . . discriminate against an individual . . . enrolled as a
student in the terms, conditions, or privileges of the
institution because of race . . . unless based on reasonable
grounds"); <u>see</u> <u>also</u> <u>Dupris</u>, ¶ 17 (holding that MHRA establishes
the exclusive remedy for conduct violating Mont. Code Ann. § 49-
2-307).[3]

Plaintiffs contend that their assault and battery claim does
not fall within the MHRA, and thus they were under no obligation
to exhaust administrative remedies.  In <u>Harrison</u>, the plaintiff
unsuccessfully made the same argument.  She argued that her claim
was not limited to the MHRA because in addition to sexual
harassment, the defendant committed a variety of torts against
her which provided separate causes of action.  The Court found

---

[3] Plaintiffs argue that the MHRA is the exclusive remedy only for
sexual discrimination in employment cases.  <u>See</u> *Plf.s' Brief* at 8-10.
Although a majority of the Montana Supreme Court's case law regarding
the MHRA exclusive remedy provision has specifically dealt with sexual
discrimination in employment, the statute is not so limited and
specifies that the MHRA is the exclusive remedy for acts alleged to
constitute a violation of the Act.  Further, in the <u>Dupris</u> case, the
Court found that the MHRA applied to discrimination in educational
institutions.

that although her employer's alleged acts provided grounds for various tort claims, the "gravamen of the [plaintiff's] claim [wa]s sexual harassment."  <u>Harrison</u>, 244 Mont. at 223, 797 P.2d at 205.

The Court explained: "[A]ny claim based on sexual harassment can be framed in terms of numerous tort theories."  <u>Id</u>.  The Court noted that when the legislature enacted § 49-2-509(7), it expressed its intent that the Montana Human Rights Commission ("MHRC") provide the exclusive remedy for illegal discrimination. The Court found that "to allow such re-characterization of what is at heart a sexual discrimination claim, would be to eviscerate the mandate of the Human Rights Commission."  <u>Id</u>.; <u>compare</u> e.g., <u>Brown v. General Servs. Admin.</u>, 425 U.S. 820, 828-29 (1976) (holding that the Civil Rights Act of 1964 provided the exclusive remedy for claims of discrimination in federal employment).

Plaintiffs argue that "[t]he fact that [D.] Doe and Newby are of different races cannot legally or rationally bar him from asserting" his claim for assault and battery. *Plf.s' Brief* at 5. They assert that the jury might find that Newby's assault was not racially motivated, or may find that Newby was acting outside the scope and authority of her position as a teacher, in which case the MHRA does not apply.  <u>Id</u>. at 6, 8.  In <u>Arthur</u>, *supra*, the Montana Supreme Court noted that the proper inquiry is whether the plaintiff makes allegations of discrimination or harassment.

-14-

The Court stated:

> [T]he MHRA is the exclusive remedy for claims of
> sexual discrimination in employment and precludes
> other tort claims which arise from allegations of
> sexual discrimination or harassment.

Arthur, ¶ 27.

Plaintiffs here have chosen to make allegations of racial discrimination a central part of their complaint.  See e.g., *Plf.s' Amend. Compl*. at ¶ 3 (alleging that D. Doe is an enrolled member of the Gros Ventres Tribe); id. at ¶ 5 (alleging that Newby is caucasian); id. at ¶ 25 (alleging that "Newby had in the past taped and bound other Native American students in her class"); id. at ¶ 31 (alleging that Dodson School District "engaged in a custom and practice of tolerating and condoning abusive behavior of non-white students in the classroom settings"); id. at ¶ 32 (alleging that Defendants "demonstrated deliberate indifference to the rights of plaintiffs in permitting and condoning the abuse of non-white students in district classrooms"); and id. at ¶ 35.  Plaintiffs' state law claim relies on the same underlying facts and allegations as their discrimination claims.  See id. at ¶ 40.

Plaintiffs' assault and battery claim is legally and factually linked with Newby's alleged racial discrimination against D. Doe.  Thus, the MHRA exclusive remedy provision controls.  Accordingly, the Court finds that Plaintiffs' state law claim, Count III of the First Amended Complaint, must be

dismissed.

### 2.    Constitutional Violation

Plaintiffs also argue that if the Court applies the MHRA exclusive remedy provision to this case, then its application violates D. Doe's rights to due process and equal protection of the law under the Fourteenth Amendment to the United States Constitution.   *Plf.s' Brief* at 10-15.   They contend that the use of the MHRA exclusive remedy provision abandons D. Doe's rights secured by the Due Process Clause of the Fourteenth Amendment because D. Doe will have "no meaningful access to the courts." Id. at 12-13.

Plaintiffs also challenge the use of the exclusive remedy provision of the MHRA in several respects as a denial of D. Doe's right to equal protection of the law.   Id.   They argue that the denial of these rights is based solely on the State's classification of D. Doe as a member of a "protected class" because of his race.   Id. at 15.   Plaintiffs assert that the actions cannot withstand strict scrutiny or otherwise meet constitutional equal protection standards.   Id.

Newby responds that Plaintiffs' arguments fail because they are premised upon the erroneous idea that "a person who alleges assault by a person of another race must file a claim under the MHRA."   *Newby's Reply Brief* at 6 (emphasis in original).   She contends that a victim is not required to file a claim under the

-16-

MHRA simply because he or she is a different race than the perpetrator.  Newby asserts, that, "[r]ather, a victim _may_ file a claim under the MHRA, if he or she so chooses, when there are facts to suggest that the motive for an adverse action is discriminatory."  _Id_. at 6-7.  She argues that the provisions of the MHRA apply equally to all those who allege discrimination, not only to those who are members of a particular race or protected class.  _Id_. at 7-9.

The State, in its amicus brief, contends that the MHRA exclusive remedy provision "does not violate principles of due process or equal protection embodied in the Fourteenth Amendment of the United States Constitution."  _State's Amicus Brief_ at 4. It argues that the Montana Supreme Court has considered and rejected such constitutional challenges.  he State urges this Court to reach the same conclusion.  _Id_. at 8.

As a general rule, federal courts "ought not to consider the Constitutionality of a state statute in the absence of a controlling interpretation of its meaning and effect by the state courts."  Arizonans for Official English v. Ariz., 520 U.S. 43, 75 (1997) (quoting Poe v. Ullman, 367 U.S. 497, 526 (1961)).  A legislative act "comes to us clothed with a presumption of constitutionality," the party challenging it has the burden of proving it unconstitutional beyond a reasonable doubt.  Miller v. U.S., 73 F.3d 878, 881 (9th Cir. 1995) (quoting In re

-17-

<u>Consolidated U.S. Atmospheric Testing Litig.</u>, 820 F.2d 982, 990
(9th Cir. 1987)) (internal quotation marks omitted); <u>see</u> <u>also</u>
<u>Romero v. J&J Tire, JMH</u>, 238 Mont. 146, 149, 777 P.2d 292, 294
(1989).

### a.   Due Process

Plaintiffs argue that the failure of the MHRA to toll the
180-day statute of limitations until D. Doe has reached the age
of majority deprives him of his due process rights.  They argue
that D. Doe will have no meaningful access to the courts because
of his minority.  Plaintiffs did not cite, nor could the Court
find, any legal authority to support this argument.  Thus,
Plaintiffs have not proven the unconstitutionality of this
statute beyond a reasonable doubt.

First, this issue is not properly before the Court.  No
MHRA claim is stated in the Amended Complaint.  In their brief,
Plaintiffs state that "[i]t is likely that the state
administrative agency will dismiss [D.] Doe's recently filed
administrative complaint as untimely." *Plf.s' Brief* at 12.  This
indicates that a MHRC complaint has been filed, but not ruled
upon.  Plaintiffs rely on a previous decision by the MHRC in
support of their statement that the complaint will be dismissed
as untimely.  Dismissal may be the ultimate decision of the MHRC
in this case, but until there is a ruling by the commission,
there is no basis to argue that D. Doe's due process rights were

violated.

Assuming, however, that Plaintiffs' assumption is true, the Court still finds that there has been no constitutional violation.  The Due Process Clause "requires the States to afford certain civil litigants a 'meaningful opportunity to be heard' by removing obstacles to their full participation in judicial proceedings."  Tenn. v. Lane, 541 U.S. 509, 523 (2004) (quoting Boddie v. Conn., 401 U.S. 371, 379 (1971)).  "Courts will generally uphold a statute of limitations against a due process challenge as long as the plaintiff is accorded a reasonable time, under all the circumstances, to bring suit before the bar takes effect."  Fields v. Legacy Health Sys., 413 F.3d 943, 956-57 (9ᵗʰ Cir. 2005) (citations omitted).

The Montana Supreme Court has previously considered and rejected state and federal constitutional challenges grounded in due process arguments against the exclusive remedy provision. The Court in Romero, *supra*, held that the Montana Legislature had a "rational basis" for making the MHRC the exclusive means of combating illegal discrimination in Montana.  238 Mont. at 150, 777 P.2d at 295.  The Court found that the provision of the MHRA that required persons to file race discrimination claims with the MHRC prior to bringing action in a district court, does not deny discrimination claimants access to the courts.  Id.

Further, in Harrison, *supra*, the Montana Supreme Court

rejected a due process challenge to the 180-day statute of
limitations found in the MHRA.  The Court stated that while
freedom from discrimination is a constitutional right in Montana
under Article II, Section 4, of the Montana Constitution,[4] a
person does not have a vested interest in a particular remedy to
a violation of that right.  244 Mont. at 225, 797 P.2d at 206
(citing Meech v. Hillhaven West, Inc., 238 Mont. 21, 34-35, 776
P.2d 448, 496 (1989)).  The Court held that:

> The legislature is free to impose reasonable
> procedural requirements on the available remedies
> so long as those requirements have a rational
> basis. (citation omitted). . . . Like any other
> statute of limitation, the Human Rights Act's 180-
> day limitation provides a reasonable means of
> preventing stale claims and ensuring that claims
> are filed before essential evidence disappears.

Id. 244 Mont. at 225-26, 797 P.2d at 206.

Although these holdings do not directly address the lack of
tolling due to D. Doe's minority, the Court finds the cases
instructive.  The MHRA provides extensive procedures for filing a
claim of discrimination and ensuring that claims will be heard in
a timely manner.  Montana law provides that D. Doe could "enforce
his rights by civil action or other legal proceedings in the same
manner as a person of full age, except that a guardian must

___

[4] Article II, § 4 provides that "[t]he dignity of the human being
is inviolable. No person shall be denied the equal protection of the
laws. Neither the state nor any person, firm, corporation, or
institution shall discriminate against any person in the exercise of
his civil or political rights on account of race, color, sex, culture,
social origin or condition, or political or religious ideas."

-20-

conduct the same." Mont. Code Ann. §§ 27-1-511, 41-1-202. These statutes authorized Johnson, as D. Doe's guardian, to timely file a human rights complaint on D. Doe's behalf.

Based on the foregoing, the Court finds that applying the MHRA exclusive remedy provision does not violate D. Doe's due process rights.

### b.   Equal Protection

Plaintiffs identify four ways in which application of the exclusive remedy provision would deny D. Doe equal protection. The list includes:

> (a) by imposing on him a statute of limitations for filing his claim, §49-2-501(4) MCA (180 day time limit for filing claim of race discrimination under Human Rights Act) that is 4 times shorter than limits imposed on other persons, §27-2-204(3), MCA (2 years for filing civil assault or battery claims) who are not classified as members of a "protected class" because of race and are not victims of a racially motivated assault;
>
> (b) by denying him the same right because of his young age to toll the statute of limitations, §27-2-401(1), MCA, that is allowed to minors who are outside his racially "protected class;"
>
> (c) by denying him the same right to plead alternative causes of action as is available under Rule 8 of the Montana Rules of Civil (footnote omitted) Procedure to those other persons outside his "protected class;" and
>
> (d) by denying him, pursuant to the provisions of the Human Rights Act, §49-2-506(2), MCA, the same opportunity to seek and obtain punitive damages against the perpetrator of the assault as available to persons outside the "protected class" that is available to them under §27-1-220, MCA

(footnote omitted).[5]

Id. at 14-15.  They contend that denial of these rights is "based solely on the State's classification of [D.] Doe as a member of a 'protected class' because of his race.  Id. at 15.

The State argues "Doe's assertion that the MHRA creates an impermissible classification based upon race is without reason or merit."  *State's Amicus Brief* at 9.  It contends that the statute's language does not classify an individual by race, but rather prohibits discrimination for a number of reasons.  Id. at 9-10.  The State asserts that "[a]ny individual subject to discrimination in education, regardless of race, is entitled to the same protections and rights and is subject to the same procedural requirements under the MHRA."  Id. at 10.  It argues that a state law which is aimed at prohibiting unlawful discrimination and ensuring equal treatment for all cannot be construed to deprive D. Doe of equal protection under the law. Id. at 11.  The Court agrees.

The Equal Protection Clause provides that: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause "is essentially a direction that all persons

---

[5] The Court notes that the Montana Supreme Court found in the Romero case, "[t]here is no constitutional right to punitive damages." 228 Mont. at 150, 777 P.2d at 295 (citations omitted).  Plaintiffs are "never entitled to exemplary damages as a matter of right."  Id.  The Court held that there is no violation of the United States or Montana Constitutions because the MHRA precludes punitive damages.  Id.

similarly situated should be treated alike." Green v. City of
Tucson, 340 F.3d 891, 896 (9th Cir. 2003) (quoting City of
Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439
(1985)).  In order to subject the MHRA exclusive remedy provision
to any form of review under the Equal Protection Clause, the
Court must determine that the law classifies persons in some
manner.  Coalition for Economic Equity v. Wilson, 122 F.3d 692,
702 (9th Cir. 1997).  Plaintiffs urge the Court to apply a
"strict scrutiny" analysis because the MHRA creates an
impermissible classification based upon race.  The Court does not
agree.

        "A denial of equal protection entails, at a minimum, a
classification that treats individuals unequally." Id. at 707
(citing Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 223-25
(1995)).  That is not the case here.  The exclusive remedy
provision of the MHRA is facially neutral.  The language of the
statute does not classify individuals by race, gender, religion,
or any other suspect classification.  Rather, it applies equally
to all those who allege discrimination, and not just those who
are members of a protected class.

        Plaintiffs argue that the exclusive remedy provision of the
MHRA as applied in this case results in unequal treatment based
upon D. Doe's race.  This contention, however, is flawed.  The
exclusive remedy provision of the MHRA applies across the board

to any and all parties who allege discrimination.  Any person who alleges discrimination has the same rights and is subject to the same procedural requirements of the MHRA.  D. Doe was not required to file a claim under the MHRA simply because he is a member of a different race than the alleged perpetrator.  D. Doe has alleged discrimination and the provisions of the MHRA will apply to him the same as they would to any person filing a discrimination claim.

The Montana Supreme Court has previously considered and rejected equal protection arguments against the exclusive remedy provision.  In Romero, the Supreme Court found that the exclusive remedy provision of the MHRA did not violate the state or federal constitutions.  238 Mont. at 149-150, 777 P.2d at 295.  Comparing their constitutional analysis regarding the Montana Medical Malpractice Act, the Court held that "[i]n a similar manner, the requirement that discrimination claimants proceed first through the Montana Human Rights Division operates equally upon all persons in like circumstances."  Id.

In Harrison, the Supreme Court examined plaintiff's argument that a male employee in the same position would fall under the three-year statute of limitations for torts while she was subjected to the 180-day statute of limitations of the MHRA.  The Court stated: "We find little reasoning and less merit in the appellant's assertion.  Both male and female victims of sexual

discrimination in employment have the same rights and are subject to the same procedural requirements of the Montana Human Rights Act." 244 Mont. at 226, 797 P.2d at 207.

Further, there is no discriminatory purpose in the MHRA. See Wash. v. Davis, 426 U.S. 229, 241 (1976) (making clear that even if a neutral law has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) ("Where the challenged governmental policy is 'facially neutral,' proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy").

The MHRA was enacted to protect all persons from illegal discrimination. It was intended to fulfill Montana's constitutional guarantee that no person would be denied equal protection of the laws of the state or discriminated against "on account of race, color, sex, culture, social origin or condition, or political or religious ideas." See Mont. Const. Art II, § 4. It would be paradoxical for the Court to conclude that by adopting laws ensuring that all Montanans have the right to be free from discrimination, Montana has run afoul of the Equal Protection Clause. See Crawford v. Bd. of Educ., 458 U.S. 527,

-25-

535 (1982) ("It would be paradoxical to conclude that by adopting the Equal Protection Clause of the Fourteenth Amendment, the voters of the State thereby had violated it").

Based on the foregoing, the Court concludes that application of the exclusive remedy provision of the MHRA does not violate D. Doe's right to equal protection.  Accordingly, Newby's motion must be granted.

**V.**   **CONCLUSION**

Based on the foregoing, IT IS HEREBY ORDERED that:

(1) Newby's Motion for Judgment on the Pleadings (*Court's Doc. No. 29*) is **GRANTED in part** and **DENIED in part**, as set forth herein.

(2) Count III of Plaintiffs' First Amended Complaint is **DISMISSED.**

(2) In addition to notifying the parties of the making of this Order, the Clerk shall forward a copy to:

> Chris D. Tweeten
> Chief Civil Counsel
> P.O. Box 201401
> Helena, Montana 59620-1401

DONE and DATED this 17th day of November, 2006.

                    /S/ Carolyn S. Ostby
                    Carolyn S. Ostby
                    United States Magistrate Judge

-26-